In the Matter of the Claim of MORRIS VERSCHLEISER against JOSEPH STERN & SON et al., Respondents. THE STATE INDUSTRIAL COMMISSION, Appellant.

**Workmen's Compensation Law — when injury to one employee from an assault by another employee so connected with his employment that he is entitled to an award under the Compensation Law.**

The claimant was employed at an abattoir as a trucker. While standing beside his truck waiting for a load, another trucker was in line behind him for a like purpose. While so waiting, a fellow-employee dropped a piece of flesh down claimant's neck. The claimant, believing the attack to have been made by a man behind him in line, went over to him and struck him several times with the piece of flesh and then threw it down. The man assaulted thereupon kicked the claimant, causing the injuries complained of. The industrial commission did not deem it necessary to determine who began the melee, but found that the claimant did not begin it. It found that claimant was engaged in the regular course of his employment when he was injured. On review of the authorities, *held*, that the injury was the result of provocation and passion engendered among employees in the course of

their employment on the premises of the employer while engaged in their daily work, and the claimant is entitled to the benefits of the Compensation Act.

*Matter of Verschleiser* v. *Stern & Son*, 188 App. Div. 937, reversed.

(Argued April 15, 1920; decided June 1, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 7, 1919, reversing an award of the State Industrial Commission made under the Workmen's Compensation Law.

The facts, so far as material, are stated in the opinion.

*Charles D. Newton, Attorney-General (E. C. Aiken* of counsel), for appellant. In the regular course of his employment claimant was first insulted and then kicked so as to produce severe injuries without any fault upon his part. The accident took place in the course of and must be said to have arisen out of the employment. (*Carbone* v. *Loft*, 174 App. Div. 901; 219 N. Y. 579; *Heitz* v. *Ruppert*, 218 N. Y. 148.)

*John N. Carlisle* and *Alfred W. Andrews* for respondents. The alleged injuries sustained by the claimant were not accidental injuries and did not arise out of or in the course of his employment. (*Stillwagon* v. *Callan Bros., Inc.*, 183 App. Div. 141; 224 N. Y. 714; *DeFilippis* v. *Falkenberg*, 170 App. Div. 153; 219 N. Y. 581; *Saenger* v. *Locke*, 220 N. Y. 556; *DeSalvis* v. *Merriham Co.*, 225 N. Y. 123; *Heitz* v. *Ruppert*, 218 N. Y. 148; *Griffin* v. *Roberson*, 176 App. Div. 6.) The statute does not provide insurance against every accident that may happen. (*Heitz* v. *Ruppert*, 218 N. Y. 148.) It is not enough for the claimant to say that the accident would not have happened if he had not been engaged in that employment. He must go further and show that the

13

accident arose because he was exposed by the nature of his employment to the peculiar danger which caused the injury and that such danger arose out of his employment. (*Butler* v. *Burton-on-Trent Union*, 5 B. W. C. C. 355; *Clifford* v. *Jay*, 2 B. W. C. C. 32; *Amys* v. *Barton*, 5 B. W. C. C. 124; *Bellaway* v. *Humphries*, 6 B. W. C. C. 53.)

ELKUS, J.   On June 7, 1918, Morris Verschleiser, the claimant, was employed by Joseph Stern Son, Inc., at its abattoir in the city of New York on the eighth floor, known as the killing floor. It appears that after each animal is killed, it is the practice to cut it open and immediately disembowel it, separating the various portions. It was the duty of the claimant, who was known as a " trucker " or " lugger," to gather the bellies on his truck and truck them to a hole or chute down which he threw them to the seventh floor.

At the time in question the claimant was standing beside his truck waiting for the " belly " of an animal being cut up by one Mandelheim.  Also waiting in line, apparently, for other portions of viscera was another trucker, Dudler.

One Louis E. Baxter, who at the time was commissioned as a veterinary inspector of the United States government, was stationed at the slaughter house and in charge of the entire building so far as government inspection was concerned.   While the claimant was waiting to have his truck loaded, some one — and the industrial commission has found — a fellow-employee of claimant, dropped a piece of flesh about two feet long around the neck of claimant.   There is some testimony that this may have been done by the veterinary.   The claimant resented the insult and assault upon him, and, in his excitement, believing the attack to have been made by Dudler, went over to him and struck him several times with the piece of flesh and then threw it down.   Dudler, thereupon, kicked the

claimant, causing the injuries complained of. Dudler's hands were occupied so he used his feet.

The state industrial commission did not find as to who began the assault upon claimant and, in his opinion, Commissioner Lyon states: " Under the circumstances here disclosed, I do not think it necessary to determine who began the melee. Certainly the claimant did not begin it." It appears that prior to this pieces of fat were thrown at the claimant by Dudler and others. The claimant testified that Dudler used to pick at and aggravate him and he told him to let him alone. About twenty minutes before the claimant received his injury, Dudler, he says, ran his truck into the one claimant was pushing, and he, claimant, says that when he felt the pieces of flesh on his neck, he exclaimed, " why don't you let me work," and threw the pieces of flesh down; that Dudler was standing next to him and then kicked him.

The industrial commission claims that this case falls within *Matter of Carbone* v. *Loft* (174 App. Div. 901; affd., 219 N. Y. 579) and *Matter of Heitz* v. *Ruppert* (218 N. Y. 148). The order of reversal by the Appellate Division, third department, is based upon *Matter of Stillwagon* v. *Callan Brothers* (183 App. Div. 141; affd., 224 N. Y. 714); *Griffin* v. *Roberson & Son* (176 App. Div. 6) and *Matter of DeFilippis* v. *Falkenberg* (170 App. Div. 153; affd., 219 N. Y. 581). This reversal was by a divided court.

In *Matter of Carbone* v. *Loft* (174 App. Div. 901; affd., 219 N. Y. 579) claimant became engaged in an exchange of insulting language with a fellow-employee who about three-quarters of an hour later violently attacked claimant with the resulting injuries for which recovery was demanded. The recovery was allowed.

In *Matter of Heitz* v. *Ruppert* (218 N. Y. 148) the facts were that a driver brought his horses into the employer's stable, where a fellow-workman and he unharnessed them and proceeded to wash them off with a hose. The driver, claimant, told the fellow-workman he was using too much

water on the horses and then the fellow-workman intention-
ally sprinkled water on the claimant. The claimant having
temporarily left the stable yard was returning to his work
when he met the fellow-workman. The claimant touched
him on the shoulder, saying " Don't do that again," where-
upon the fellow-workman slapped the claimant on the
shoulder and as the claimant turned around the man's
finger stuck in claimant's eye causing severe injury. This
court held this injury was accidental and within the mean-
ing of the statute. It was sudden and unlooked for and
the purpose of the act is to insure the workman at the
expense of the employer against personal injuries, not
expected or designed by the workman himself, provided
such injuries arise out of and in the course of employment.
The opinion, however, was careful to say that it was an
obligation of claimant's employment to take care of the
horses which he drove and to see that they were not
injured by injudicious wetting or otherwise by his fellow-
workmen — that in the course of their employment while
the two men were at work a quarrel or argument arose
over the wetting of the horses and personal injury grew
out of the physical contact resulting from the quarrel
and that, therefore, the accident grew out of and in the
course of employment.

In *Matter of Stillwagon* v. *Callan* (183 App. Div. 141;
affd., 224 N. Y. 714) the injury was the result of an assault
initiated by the deceased, Stillwagon, and he could not
be the beneficiary of his own wrongful act when that act
was not committed in aid of or in the scope of his work.

*Griffin* v. *Roberson* (176 App. Div. 6) was another case
where the claimant initiated the assault which resulted
in his own injury and death. In that case the court well
stated the distinction between this line of cases and the
cases of *Matter of Carbone* v. *Loft* and *Matter of Heitz* v.
*Ruppert.* " It has has been held in different cases that
when a servant in the course of his employment is assaulted
by another he may sometimes be entitled to compensation.

Such was the case of *Carbone* v. *Loft,* decided without opinion by this court.  *  *  *  This is on the theory that the injured servant is protecting his master's property or promoting his master's interest, or that the assault on him was in some way incidental to the duty which he owed his master." (p. 7.)

In *Matter of DeFilippis* v. *Falkenberg* (170 App. Div. 153; affd., 219 N. Y. 581) the injury did not happen in the course of the employment. It did not happen in the work-room of the employer, but in an adjoining toilet for the convenience of the work people. It was not due to any unsafe conditions of the toilet maintained by the employer, but solely to the personal act of a fellow-servant. A pair of scissors was thrust through a partition, striking claimant in the eye.

In the instant case the claimant was not the aggressor, but was attending to his master's business on his master's premises at the time of the assault. He was waiting to " lug " away viscera and while waiting there for his master's benefit and in the work for which he was employed was assaulted. In his excitement he defended himself by a counter attack upon, as it seems, another employee, with the resulting injury to himself. He did not initiate the " melee " but was desirous only of transacting his master's business in peace. This fellow-employee had previously, he claimed, interfered with his working. The industrial commission has found that claimant was engaged in the regular course of his employment when he was kicked. This is a finding of fact. The claimant was thrown on the defensive, striking Dudler with the piece of flesh, who kicked him. If claimant was right in assuming that Dudler was his assailant, his striking back would have been the natural result of the act, and it might then well be said that claimant was within the act.

The Workmen's Compensation Law should be construed broadly. Compensation under it does not depend on any

fault of the master or any negligence of the servant. The law was enacted to do away with the defenses which had governed the law of master and servant. The question in each case arising under the Workmen's Compensation Law is, " Was the injury received while engaged in the master's business? " If the servant had left his employment .and was willfully pursuing designs of his own he would not be entitled to compensation. The man who initiates an assault is doing a willful thing, but this cannot be said of the man who, surprised by physical assault or insult, reacts and in self-protection strikes another. His act is as involuntary as that of closing the eye to avoid dust, the same action and reaction which the law recognizes in its definition of manslaughter.

Danger of employment in modern business comes from the gathering together of great and dangerous machines. There is a line of cases which hold that if an employer continues to employ a man of dangerous temper· after he has become aware of the same and he inflicts injury on a fellow-workman, the workman will be entitled to recovery under the Compensation Act. This, however, is a retrogression to the old master and servant law and clearly against the intent of the Workmen's Compensation Law which does not look for fault, but merely insures workmen in certain employments.

In the instant case the injury was the result of provocation and passion engendered between employees in the course of their employment on the premises of the employer while engaged in their daily work. (M'Intyre v. Rodger & Co., 41 Scot. L. Rep. 107; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31.)

Under the circumstances of the instant case a workman at work for his master who sustains injury because of his environment is entitled to recover. This right to recover is not nullified by the fact that his injury is augmented by natural human reactions to the danger or injury threatened or done.

The purpose of the Compensation Act was to benefit certain workmen otherwise without legal recovery. Under its provisions they may receive compensation independent of the fault of the employer at common law or other statutes.

As Judge Pound said in *Matter of Heitz* v. *Ruppert* (218 N. Y. 148, 154), speaking of the effect and purpose of the Compensation Act: "The law has been and should be construed fairly, indeed liberally, in favor of the employee. Against its justness or economic soundness nothing can be said."

It may seem harsh and arbitrary to impose liability upon a master for an assault committed by a workman upon a co-workman, but the purpose and intent of the statute is to fix an arbitrary liability in the greater public interest involved.

This legislation was to ameliorate a social condition — not to define a situation or fix a liability by an adherence to the old common law. Liability was imposed regardless of fault — vitally different from the rule under the common law. Injury by an employee moved by some cause aside from his regular duties may be considered an inevitable, however undesirable, result — a risk which is incident to the employment of many persons. It is a burden which industry may well bear under this legislation. (*Hulley* v. *Moosbrugger*, 87 N. J. L. 103; *Thom* v. *Sinclair*, 1917 A. C. 127; *Pekin Cooperage Co.* v. *Industrial Board*, 277 Ill. 53; *Knopp* v. *American Car & F. Co.*, 186 Ill. App. 605; 29 Yale Law Journal, 672.)

The claimant is entitled to the benefit of the act.

The order of the Appellate Division should be reversed and the award of the industrial commission affirmed, with costs in this court and Appellate Division.

McLaughlin, J. (dissenting). I dissent. This case in principle cannot be distinguished from *Matter of Stillwagon* v. *Callan Bros.* (183 App. Div. 141; affd., on opinion

below, 224 N. Y. 714). In that case the deceased and a fellow-employee were each running a motor truck and had gone from the premises of the employer for the purpose of loading their trucks with brick from cars standing on a railroad track. They got into an altercation as to their respective rights to first load, each claiming that right. According to the findings of the commission, "After a short battle of words the two men came to blows and in the melee Henry Stillwagon was struck by his fellow-employee and knocked down " and so injured that he died a short time thereafter. The award made by the commission was reversed by the Appellate Division, that court, as appears from the prevailing opinion, holding that the injury resulted solely because Stillwagon in serving his own purpose willfully sought to injure his co-employee and that the statute specifically excepted such injuries from its operation.

In the instant case Verschleiser, while handling some part of the carcass of a slaughtered animal, believing he had been insulted and imposed upon by some of his co-employees, assaulted and struck one Dudler. Dudler had not imposed upon or insulted the claimant; there is no finding to that effect; there is no suggestion to that effect in the evidence; and if we may look to the opinion of the commission it there states that he was not one of the co-employees who had insulted and imposed upon the claimant. After the claimant had assaulted Dudler the latter repelled the attack by kicking him, thus inflicting the injury for which the recovery was sought.

In *Matter of Heitz* v. *Ruppert* (218 N. Y. 148) this court held that the words " arising out of and in the course of employment " are conjunctive and relief can be had under the act only when the accident arose both " out of " and " in the course of " employment; that the injury must be received (a) while the workman is doing the duty he is employed to perform, and also (b) as a natural incident of the work; that it must be one of the risks connected

with the employment, flowing therefrom as a natural consequence and directly connected with the work. When the facts here involved are subjected to this test the claimant's case is not within the statute. He was not at the time he was injured engaged in doing the duty he was employed to perform when he stopped his work and made the assault upon Dudler. Nor can it be said that the injury was the natural incident to the work which he was required to perform.

The order of the Appellate Division should be affirmed, with costs against the state industrial commission.

HOGAN, CARDOZO and CRANE, JJ., concur with ELKUS, J., and CHASE, J., concurs in result; HISCOCK, Ch. J., concurs with McLAUGHLIN, J.

Order reversed, etc.