CHARLES MASCIKA *vs.* THE CONNECTICUT TOOL AND ENGINEERING COMPANY ET AL.

Third Judicial District, New Haven, June Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued June 5th—decided July 10th, 1929.

*Thomas R. Robinson,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellant (defendant).

*John F. Chatfield,* for the appellee (plaintiff).

BANKS, J.   The plaintiff, a boy sixteen years old, was employed on March 25th, 1928, by The Connecticut Tool and Engineering Company, one of the defendants, on a power press, starting his work on the press each day at 7:30 a. m.   It was necessary to be

at the factory prior to 7:30 in order to ring in, place his lunch and hang up his coat and be ready to begin work when the whistle blew. On this day the plaintiff walked to the factory, rang in the time clock about 7:20 and went out into the yard at the rear of the factory to await the blowing of the whistle. The yard was in the joint use of this defendant employer and an adjoining concern. About the middle of the yard was a wall of empty boxes and some machinery belonging to the defendant employer. When the plaintiff entered the yard two boys, his fellow employees, were then tossing a stick across the yard. The plaintiff stopped behind the boxes in the middle, and was struck in the left eye by the stick thrown by one of the other boys. The general manager knew the boys were in the habit of playing in the yard while waiting for work to begin and he had instructed the boys not to play around the machines in the yard. So far as appears he gave them no further instruction or warning as to their playing in the yard. A necessary inference from these circumstances is that the boys were playing in the defendant's yard in the rear of its factory with its knowledge and acquiescence.

All specifications of appeal seeking corrections of the finding have been abandoned with the exception of that incorporating among the respondent's claims of law in paragraph seven, the claim, "that the injury did not arise out of employment but arose from horseplay or larking, not incident to the employment." The appellant makes no attempt to furnish the facts substantiating this claim. In its brief the appellant abandons its claim that the plaintiff's injury did not arise in the course of his employment, thus leaving the sole question for our decision—whether the injury arose out of the employment.

Public Acts of 1927, Chapter 307, § 7, amending our

Compensation Act, contains the following definition: "The words 'arising out of and in the course of his employment,' as used in said chapter 284, shall mean an accidental injury happening to an employee or an occupational disease of such employee originating while he shall have been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while so engaged elsewhere upon the employer's business or affairs by the direction, express or implied, of the employer. A personal injury shall not be deemed to arise out of the employment unless causally traceable to the employment other than through weakened resistance or lowered vitality." This statutory definition does not differ essentially, with respect to any questions here involved, from the construction of these terms previously adopted in numerous decisions of this court. *Ohmen* v. *Adams Brothers,* 109 Conn. 378, 146 Atl. 825. Under the statute injuries are not deemed to arise out of the employment "unless causally traceable" to it, which negative provision does not, as already noted, materially change the rule as stated by us in *Marchiatello* v. *Lynch Realty Co.,* 94 Conn. 260, 263, 108 Atl. 799, as follows: "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on. Sometimes the employment will be found to directly cause the injury, but more often it arises out of the conditions incident to the employment. But in every case there must be apparent some causal connection between the injury and the employment or the conditions under which it is required to be per-

formed, before the injury can be found to arise out of the employment." See also *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 96 Atl. 368; *Merlino* v. *Connecticut Quarries Co.*, 93 Conn. 57, 59, 61, 104 Atl. 396; *Corvi* v. *Stiles & Reynolds Brick Co.*, 103 Conn. 449, 452, 453, 130 Atl. 674. A causal connection between the injury and the employment is established if after the event the injury, though not foreseen or expected, had its origin in a risk connected with the employment, and flowed from that source as a natural consequence. *McNicol's Case*, 215 Mass. 497, 499, 102 N. E. 697. There is a substantial agreement among the authorities as to the test to be applied. The difficulty arises in its application. Injuries resulting from horseplay or skylarking by employees have been the subject-matter of many decisions under the compensation laws of numerous jurisdictions. The cases have been brought together and digested in an exhaustive note in 13 A. L. R. 540, supplemented by annotations to later cases in 20 A. L. R. 882, 36 A. L. R. 1469, 43 A. L. R. 492, and 46 A. L. R. 1150. It seems clear upon principle and authority that where an employee indulges in horseplay with his fellow employees during the hours of his employment with resulting injury to himself, his injuries cannot be deemed to have had any causal connection with his employment. In such case he has voluntarily departed from the duties of his employment and embarked upon an enterprise of his own not contemplated by the terms of his employment. His injuries result from his own act and from a condition brought about by himself and not incident to his employment. They have their origin in a risk which he has himself created and which has no causal connection with his employment. *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 103 Atl. 115.

Where, as here, the claimant, while in the course of his employment, is injured as a result of the fooling or skylarking of his fellow employees in which he is not a participant, a more difficult question arises and one upon which there is a decided conflict of authority. Courts denying compensation in such cases have said that there was no causal connection between the employment and the injury, that the terms of employment contemplated work and not play and that injuries resulting from the latter were not reasonably to be expected and were not one of the risks of the employment. *Lee's Case,* 240 Mass. 473, 134 N. E. 268, 20 A. L. R. 870, is typical of the cases so holding. Other courts, applying substantially the same test to similar facts, are yet able to see a causal connection between the employment and the injury. It seems to them reasonable to expect that men and boys brought together in the contact of a common employment will occasionally play during their working hours, that the occasional indulgence in play is a condition incident to the employment, and that the liability of resulting injury to an employee, who has not himself departed from the duties of his employment, is a risk of his employment arising out of the conditions under which he works, and therefore compensable. Typical of the cases adhering to this position is the case of *Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522. The cases upon both sides of the question are numerous and most of them are referred to in the A. L. R. annotations, *supra.* Undoubtedly the conflict of opinion is due to differing conceptions of the nature of employment. If only those injuries are compensable which arise directly from the employment itself, as from the dangerous nature of the business, or of the machines upon which the work is done, or from the acts of fellow employees

within the scope of their employment no recovery of course can be had in such a case as this, and such is the theory of the cases denying recovery for injuries resulting from skylarking. In *Lee's Case, supra,* the court pointed out that the acts were "wholly outside of the scope of the employment of those who caused the injury." The broader conception of employment adopted in *Leonbruno* v. *Champlain Silk Mills, supra,* includes the conditions incident to it, and includes as risks of the employment those which arise out of the conditions under which the employment is carried on. Whether the acts of a fellow workman are within the scope of his employment is not here the test of liability, but rather whether they are acts such as might reasonably be expected under the conditions of the employment. Our own decisions make it clear that we have adopted a broader conception of employment and of the nature of the risks arising out of it than is found in *Lee's Case, supra,* but we have never adopted the position taken by the New York Court of Appeals in *Leonbruno* v. *Champlain Silk Mills, supra.* That decision would make the recovery dependent upon the fact that boys occasionally would indulge in play in the course of their employment and would make the recovery available whether the injured was the passive victim or the active participant in the play. In *Jacquemin* v. *Turner & Seymour Mfg. Co., supra,* we referred to the case of *Heitz* v. *Ruppert,* 218 N. Y. 184, 112 N. E. 750, where one Guth slapped Heitz on the shoulder, and as he turned Guth's finger stuck in Heitz's eye, and said: "That case may perhaps be distinguishable from this because Heitz, unlike Jacquemin, was passive and he was injured while actually at his work." In *Marchiatello* v. *Lynch Realty Co., supra,* a watchman employed by the defendant was shot and killed by the

accidental discharge in an adjoining room of a pistol in the hands of an errand boy who had picked it up from a desk in the office and was fooling or experimenting with it. We held that the employee's injury might fairly be said to result from the conditions under which he was obliged to work and hence resulted from a risk of the employment and arose out of it. In *Anderson* v. *Security Building Co.,* 100 Conn. 373, 123 Atl. 843, the plaintiff and a fellow employee were employed as janitors in an office building and the latter, becoming insane, without provocation shot and wounded the plaintiff. We said (p. 377): "Whenever an employer puts his employees at work with fellow servants, the conditions actually existing—apart from the possibility of wilful assaults by a fellow servant independent of his employment—which result in injury to a fellow employee, are a basis for compensation under the implied contract of that Act." The injury arises out of the employment when it occurs in the course of the employment and is the result of a risk incident to the conditions under which the employment is performed. The plaintiff's injuries concededly occurred in the course of his employment. He was upon the premises of his employer in a place where he had a right to be and at a time just preceding the beginning of actual work, when he had a right to be in this place. While he stood behind the barricade of boxes he received an injury caused by one of defendant's other employees while playing with his fellow employee. His employer knew employees were liable to be in this yard and that the boy employees were in the habit of playing there but he did not order the play to cease or the employees to leave the yard. In *Marchiatello* v. *Lynch Realty Co.,* 94 Conn. 260, 108 Atl. 799, at page 264, we say: "The sport and mischief of an employee resulting in

injury to a fellow-employee cannot be held to be a risk of the employment unless the employer has knowledge . . . of the practice, and has failed to stop it."

The injury to the plaintiff was made likely, because of the conditions under which his employer's business was carried on "and the result . . . should have been in the contemplation of the employer." *Jacquemin* v. *Turner & Seymour Mfg. Co., supra,* at pp. 385, 386.

So far as the plaintiff was concerned the legal situation was the same as if he had been struck while actually engaged in the operation of his press. The risk of being injured by reason of the skylarking of his fellow employees while he himself was a passive actor was one of the risks of his employment, being incident to the conditions under which his work was performed.

The trial court did not err in ruling that the plaintiff's injuries arose out of his employment.

There is no error.

In this opinion the other judges concurred.