WALTER STULGINSKI v. THE WATERBURY ROLLING
MILLS COMPANY ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued March 1st—decided May 5th, 1938.

*Arthur B. O'Keefe, Jr.,* with whom was *James M. Kelly,* and, on the brief, *Arthur B. O'Keefe,* for the appellants (defendants).

*Michael V. Blansfield,* with whom was *Harry M. Albert,* for the appellee (plaintiff).

MALTBIE, C. J.   The plaintiff was employed by the defendant as a caster's helper, as was Mike Cizauskas, who, on August 9th, 1937, was working at a casting pot ten or fifteen feet distant from the one at which the plaintiff was working.   It was customary for each helper to skim dross from the top of the molten metal and pile it on the floor; at intervals also he would sweep the floor of the part of the room where he was working.   The sweepings contained some oil and, when mingled with the dross, smoke would be cre-

ated. The compensation commissioner found that on this day the plaintiff, in accordance with a method approved by the employer, deposited the sweepings upon the pile of dross, smoke developed, and, the day being warm and the doors open, the smoke was blown in the direction where Cizauskas was working. He thought that the plaintiff was directing the smoke toward him for the purpose of annoying him, became angry and threw a block of wood at the plaintiff. The latter thereupon picked up a handful of ashes and threw them at Cizauskas, who then rushed over, threatening the plaintiff, and pushed him backward so that he fell and fractured his arm. The plaintiff was not the aggressor but was attacked primarily because of the smoke annoying his fellow workman, which smoke was a direct result of a customary procedure as to the sweepings. The defendant had no prior knowledge that either the plaintiff or Cizauskas was of a quarrelsome nature, and they had been on very friendly terms.

Such dispute as there is as to the facts relates to the details of the altercation between the two men. While the evidence as to the findings which the defendant sought to have eliminated was conflicting, it affords support for the findings made and those sought to be added are not admitted or undisputed. The Superior Court was justified in finding no error in denying the motion to correct. *Bailey* v. *Mitchell,* 113 Conn. 721, 725, 156 Atl. 856. The commissioner appears to have accepted, in the main, as was his right, the testimony of the plaintiff as to the details of the occurrences, although the only neutral eyewitness, the caster with whom the plaintiff was working, testified that the two men were "going at it hand and fist," and the plaintiff described what he threw at

Cizauskas was "a little piece of burning coal, like a clinker, but it was a soft piece [of] ashes."

Clearly the plaintiff's injury was sustained in the course of his employment. The issue is whether or not, upon the facts found, it arose out of it, as the commissioner also concluded. In *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 384, 103 Atl. 115, a case where an injury was suffered by the plaintiff in a fight with another employee, we stated the basic principle involved as follows: "In *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 309, 97 Atl. 320, we held that an injury 'arises out of' an employment when it occurs in the course of the employment and is a natural and necessary incident or consequence of it, though not foreseen or expected; and that such an injury may arise either directly from the employment or as incident to it, or to the conditions and exposure surrounding it. If one employee assaults another employee solely to gratify his feeling of anger or hatred, the injury results from the voluntary acts of the assailant and cannot be said to arise either directly out of the employment, or as an incident of it. But when the employee is assaulted while he is defending his employer, or his employer's property, or his employer's interest, or when the assault was incidental to some duty of his employment, the injuries he suffers in consequence of the assault will, as a rule, arise out of the employment."

In that case the parties to the fight were casters; the company for which they worked supplied only a limited number of ladles; the encounter arose when the plaintiff started to pick up a ladle and was ordered by the other employee, O'Shaugnessy, to let it alone. Angry words then passed between them and O'Shaugnessy started for the plaintiff, who advanced to meet him. They fell to the floor and the plaintiff called

O'Shaugnessy's attention to the fact that they were likely to spoil the mould. Thereupon O'Shaugnessy let the plaintiff up and he immediately started for O'Shaugnessy again. It was in this second encounter that the plaintiff suffered the injury for which he claimed compensation. We stated (p. 386): "O'Shaugnessy asserted a right over Jacquemin's ladle which he did not have. He began the quarrel and fight. These were purely personal. They had no relation to the special conditions of the business so far as the finding shows. And when Jacquemin had full opportunity to have desisted from the fight he chose to renew it and thereafter received his injury. The fight occurred in the course of the employment, but did not originate in it or arise as a consequence or incident of it. These men turned temporarily from their work to engage in their own quarrel. Nothing their employer required of them would necessarily provoke them to a quarrel, nor could this have been reasonably anticipated. The fact that employees sometimes quarrel and fight while at work, does not make the injury which may result one which arises out of their employment. There must be some reasonable connection between the injury suffered and the employment or the conditions under which it is pursued."

In *Munro* v. *Williams*, 94 Conn. 377, 381, 382, 109 Atl. 129, we pointed out that the *Jacquemin* case "was that of a personal dispute and quarrel between two employees." Under such circumstances the plaintiff was not entitled to compensation. While the language of the opinion goes somewhat farther, it is authority only in support of that principle and should not be extended beyond it. It was decided in 1918, less than five years after the Compensation Act first took effect. It is at least doubtful whether in view of the later decisions in our own and other courts we would today

arrive at the same conclusion upon the facts stated in the opinion.

The conditions of employment are not confined to those which the employer creates. In *Marchiatello v. Lynch Realty Co.*, 94 Conn. 260, 108 Atl. 799, we upheld an award of compensation where a watchman was accidentally shot by a fellow-employee with a pistol left upon a desk in one of the rooms of the factory. We said (p. 264): "The sport and mischief of one employee resulting in injury to a fellow-employee cannot be held to be a risk of the employment unless the employer has knowledge or means of knowledge of the practice, and has failed to stop it. The watchman was required to perform his duties under the existing conditions of the employment, which were the presence of a boy and a pistol where the watchman was obliged to work, the knowledge of the boy that the pistol was in plain view and at hand; and the knowledge of the employer that the boy was liable to handle the pistol and to cause it to go off. The placing of the pistol out of the sight of the curious boy was within the power of the employer. By his failure to exercise such control, the pistol in the place in which [the boy] found it became one of the conditions under which the watchman was required to work, and while pursuing his work he was hit by a bullet from the pistol while in the hands of this boy. The injury was a consequence of this condition, and hence resulted from a risk of the employment and arose out of it." In *Mascika v. Connecticut Tool & Engineering Co.*, 109 Conn. 473, 147 Atl. 11, where a boy was injured while waiting in the yard of the factory where he was employed to begin work, by a stick thrown by one of two other boys who were playing in the yard, we upheld an award of compensation, and we pointed out the fact that the compensation commissioner had

found that the employer knew that boys were in the habit of playing in the yard and had not ordered the practice to cease. Where an employer has knowledge, actual or constructive, of the conditions under which the employment is actually being carried on and permits them to continue, they become conditions of the employment.

In the *Mascika* case we said (p. 477): "A causal connection between the injury and the employment is established if after the event the injury, though not foreseen or expected, had its origin in a risk connected with the employment, and flowed from that source as a natural consequence." In determining whether the injury does result from the conditions of the employment, the normal reactions of men to those conditions are to be considered. *Pekin Cooperage Co.* v. *Industrial Commission*, 285 Ill. 31, 35, 120 N. E. 530. In *Verschleiser* v. *Joseph Stern & Son*, 229 N. Y. 192, 198, 128 N. E. 126, it is said that the right of an employee to recover compensation "is not nullified by the fact that his injury is augmented by natural human reactions to the danger or injury threatened or done."

If injury results as a natural consequence of the conditions of the employment, recovery of compensation is not necessarily defeated by the fact that it is suffered in the course of a fight in which the claimant becomes involved with another employee. The question is whether taking all the facts into consideration the conditions of the employment are the legal cause of the injury. "But the essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must

be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." *Madden's Case,* 222 Mass. 487, 495, 111 N. E. 379; *Interstate Foundry Co.* v. *Ponder,* 16 Ohio App. 319, 321. That the injury is immediately caused by a fight between two employees does not necessarily break the chain of causation between the conditions of employment and the injury where it results from the normal reactions of human nature due to conditions under which the men are thrown together in a common employment. Restatement, Torts, Vol. 2, § 447 (c) and Comment.

If, however, as pointed out in the *Jacquemin* case, the fight results solely from a feeling of anger or hatred by one employee for another or from ill-will between them, though it occurs in the course of the employment, it does not arise out of it. *Martin* v. *Sloss-Sheffield Steel & Iron Co.,* 216 Ala. 500, 113 So. 578; *Urak* v. *Morris & Co.,* 107 Neb. 411, 186 N. W. 345; *Chicago* v. *Industrial Commission,* 292 Ill. 406, 127 N. E. 49. In such a situation the principle is the same as that applied where compensation is denied because of injury resulting from horseplay between employees, which we have stated in this way: "It seems clear upon principle and authority that where an employee indulges in horseplay with his fellow-employees during the hours of his employment with resulting injury to himself, his injuries cannot be deemed to have had any causal connection with his employment. In such case he has voluntarily departed from the duties of his employment and embarked upon an enterprise of his own not contemplated by the terms of his employment. His injuries result from his own act and from a condition brought about by himself and not incident to his employment. They

had their origin in a risk which he had himself created and which has no causal connection with his employment." *Mascika* v. *Connecticut Tool & Engineering Co.*, 109 Conn. 473, 477, 147 Atl. 11. But even though personal ill-feeling between employees engaging in a fight may exist, it still may not enter the situation to such an extent that it is to be considered as the legal cause of the injury. *San Diego & Arizona Ry. Co.* v. *Industrial Accident Commission*, 193 Cal. 341, 343, 223 Pac. 972.

Even though the fight originated in the conditions of employment, if its continuance or its seriousness was due to personal motives and the like, it may well be that the injury is no longer to be regarded as a natural consequence of the conditions of the employment but the real cause of the injury may be found in the personal relations of the parties to each other. This was the situation as found by the court in the *Jacquemin* case. In *Gray's Case*, 123 Me. 86, 121 Atl. 556, the court, in denying compensation, described such a situation when it said (p. 89): "Claimant's injury arose, not out of his employment as a contributing proximate cause, but in the broadest view only in the course of that employment. When his antagonist fled, the quarrel ceased. Not content, however, to leave the matter stand, the claimant pursued his vanquished though still insulting foe, and becoming himself the assailant waged action anew." On the other hand, not every temporary cessation of strife is necessarily sufficient to break the chain of causation between the employment and the injury. *Hinchuk* v. *Swift & Co.*, 149 Minn. 1, 182 N. E. 622.

Even where an injured employee is wholly passive, compensation will be refused unless the injury arose out of the conditions of the employment. *Porter* v. *New Haven*, 105 Conn. 394, 135 Atl. 293; *Scholtzhauer*

v. *C. & L. Lunch Co.*, 233 N. Y. 12, 134 N. E. 900; *Royal Indemnity Co.* v. *Industrial Accident Commission*, 192 Cal. 675, 221 Pac. 371. Some of the cases in which compensation has been awarded emphasize the fact that the injured employee was not the aggressor. See, e. g., *Verschleiser* v. *Joseph Stern & Son*, 229 N. Y. 192, 198, 128 N. E. 126; *Globe Indemnity Co.* v. *Industrial Accident Commission*, 193 Cal. 470, 471, 225 Pac. 273. On the other hand, in two decisions the fact that the injured employee was the aggressor was considered to be the determining element in denying compensation. *Triangle Auto Painting & Trimming Co.* v. *Industrial Commission*, 346 Ill. 609, 148 N. E. 886; *Merkel* v. *T. A. Gillespie Co., Inc.*, 162 Atl. (N. J.) 250. The persuasiveness of the opinion in the latter case is weakened by the fact that, as therein appears, the New Jersey courts have adopted a narrower view than that generally held of the principles governing a right to compensation where an employee is injured in a fight with another. The adoption of a rule, that if an injured employee was the aggressor he could not recover compensation, though the injury arose out of the conditions of the employment, would require a definition of terms which would be extremely difficult. Certainly to hold that no matter what provocation and angry words there might have been between the parties, he who struck the first blow, slight though it might be, would be denied compensation would be neither reasonable nor in accordance with sound principles. That the injured employee was the aggressor would certainly be a factor, in some cases an important factor, to be considered in determining whether the chain of causation between the conditions of the employment and the injury had been broken. But it would have that effect as bearing upon the question whether there had inter-

vened personal motives, designs, or the like, sufficient to constitute an intervening cause.

In this case nothing indicates that the fight between the parties was actuated by any ill-will between them, but, on the other hand, the trial court has found that they had previously been on very friendly terms. While it is found that the employer had no prior reason to apprehend dissension between the two parties, it was not necessary, as we have seen, that the risk of this happening be one which was or ought to have been specifically foreseen or expected, provided the disagreement was a natural consequence of the conditions of the employment. The fight arose out of the method in which the employment was customarily carried on in the plant and which was approved by the employer. The question presented in this type of case, as in others involving the issue whether an injury arose out of the employment, is essentially one of fact, to be determined in view of all the relevant circumstances, and the conclusion of the commissioner must stand unless it is one he could not reasonably or legally reach upon the subordinate facts. *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 356, 122 Atl. 63; *Bailey* v. *Mitchell*, 113 Conn. 721, 726, 156 Atl. 856. Upon the facts of this case the commissioner could reasonably and legally reach the conclusion that the plaintiff's injury arose out of the conditions of the employment and that he was entitled to compensation.

There is no error.

In this opinion AVERY, BROWN and JENNINGS, Js., concurred.

HINMAN, J., concurring in the result. It appears from the finding that the events in question were not

actuated by personal enmity or ill-will unconnected with the employment but that they bore a direct relation thereto; Cizauskas' resentment was aroused by the manner in which the plaintiff was doing his work, although it was at least tacitly approved by the employer, he was the original aggressor in words and in throwing the block, to which the plaintiff's retaliation by throwing the ashes may be regarded as an instinctive and in a sense involuntary reaction, and thereafter the plaintiff remained passively in the place where it was his duty to be while Cizauskas continued, as he began, to be the aggressor until the plaintiff was injured. I regard these considerations as sufficient to so distinguish the case from *Jacquemin* v. *Turner & Seymour Mfg. Co.*, supra, as to warrant the conclusion reached by the compensation commissioner, without the reconsideration of that case which is contained in the majority opinion, and which, I apprehend, may impair the salutary effect which it has so long exerted as a deterrent to claims for compensation for injuries incurred in altercations between employees resulting from personal quarrels occurring in the course of, but in no true sense arising out of, the employment.