Essex County Court of Common Pleas.

ROBERT MONTE, PETITIONER-APPELLANT, v. GENERAL MOTORS CORP., RESPONDENT-APPELLEE.

Decided November 18, 1946.

For the petitioner-appellant, *Abram A. Golden.*

For the respondent-appellee, *Reid, Kelly & Flaherty* (by *Isidor Kalisch*).

HARTSHORNE, C. P. J. The petitioner-employee, Monte, was a helper at the time of his injuries, acting under the orders of one Burfield. At Burfield's direction, they both went to the aid of another workman, Spinola, with whom Monte had had no previous personal relations of any moment, who was working on an acetylene gas tank with a wrench, which did not suffice, so Burfield told Monte to go get another

wrench. Apparently Monte took his own time about doing so, for he admits that Spinola called to him once, or perhaps twice, "If you are going to get it, get going." To this Monte replied, "Who made you my boss?" adding some unpleasant epithets. Thereupon, Burfield, the foreman, seeing that Monte, instead of going to get the wrench, as ordered, was engaging in a verbal dispute with Spinola, went to get the wrench himself. When he returned he found Monte lying on the floor, with a bloody face.

What happened while Burfield was getting the wrench, and the petitioner, Monte, was engaging in the quarrel with Spinola, is naturally somewhat in dispute. Monte says, that after he asked Spinola who made him his boss, Spinola came out of the cage, in which he had been working, toward Monte with a wrench "telling me what I was supposed to do and started to use abusive language" and thereafter struck him in the face, knocking him to the ground. During this time Monte claims that he was merely "pulling up the zipper on my lumber jacket" and neither attempted to strike Spinola nor called the latter names. Spinola, on the other hand (and we must bear in mind that he has no direct interest, as has Monte, in the present controversy) testifies that not only did Monte call him names, as above, but that thereafter "he also said he was going to take care of me, and he came towards me as if he were going to hit me," with further epithets. This version seems to have been believed by the Bureau, which saw and heard the witnesses.

In any event, it is clear that both Monte and Spinola stopped the work they were directed to do—Monte to get the wrench, Spinola to shut off the tank—in order to engage in a personal quarrel, leaving Burfield, the foreman, to carry out his own orders himself.

The question thus is whether Spinola's striking of Monte, in the course of this personal quarrel, which occurred during working hours and within the plant, constitutes a compensable accident.

True, the fact that Spinola's blow, which caused the injuries and consequent disability, was intentional, does not prevent the incident from being an accident. The test there

is not the status of the one causing the injuries, but that of petitioner, *i. e.,* was it unexpected as to him? *Geltman* v. *Reliable Co.* (*Court of Errors and Appeals*), 128 *N. J. L.* 443; 25 *Atl. Rep.* (*2d*) 894. While there may be some slight question as to the unexpectedness of the blow, even to Monte, in view of his unyielding attitude, the more difficult question is, even assuming the incident to be an accident, whether such accident arose "out of, and in the course of, the employment."

Here again, the test is the status of petitioner in that regard, not that of his assailant, who may well have been a third party, entirely disconnected from the employment. *Gargano* v. *Essex County News,* 129 *N. J. L.* 369; 29 *Atl. Rep.* (*2d*) 879; *affirmed,* 130 *N. J. L.* 559; 33 *Atl. Rep.* (*2d*) 905. The specific question is whether petitioner, at the time of the accident, was engaged in and about his employment, so that the accident arose in the course of the employment, and whether the accident was so connected with the employment as to arise out of it.

If petitioner had ceased acting in furtherance of his employment, and had deviated to a matter of concern personal to himself, not reasonably necessitated by his employment as incidental thereto, he would no longer be acting in the course of his employment. This, it would seem, was the very situation here. For not only was Monte engaged in a personal quarrel with Spinola, but he had become so engrossed in this quarrel, that he failed to obey orders, and his failure to obey such orders had required Burfield, the foreman, to do Monte's work for him. Clearly, this action of Monte's was not in furtherance of his employment, nor reasonably necessitated thereby, but was, on the other hand, a matter of concern purely personal to Monte. Furthermore, while in one sense this personal quarrel arose out of the employment, in that the employment gave rise to the situation which aroused the personal ill feelings between the two, it was not at all the fact that Monte was employed which inflamed Spinola into striking him, but Monte's uncalled-for personal attitude, and failure to do the work directed, which angered Spinola and caused the blow.

Nor should undue stress be laid upon who was the technical aggressor. The question of who is the aggressor, while evidential, would not seem to be the true test in cases such as this, as distinguished from criminal proceedings, and proceedings at law for damages, where the illegality of the assault, based on a finding that defendant was the aggressor, is usually of the essence. In compensation proceedings, where, on the other hand, the responsibility of a third party to the incident—the employer—is the ultimate issue, the test is, as seen above (1) whether there is an accident, (2) whether the accident arises out of the employment, (3) whether the accident arises in the course of the employment. In such cases, the fact that the petitioner was the aggressor, would seem to be merely evidential as to the basic issue, whether petitioner's injuries arose at a time, and under circumstances, legally disconnected from his employment.

True, there are cases from other jurisdictions, holding that where petitioner has not been shown to have been the actual physical aggressor, he can recover compensation for injuries received in a quarrel with another employee, with *dicta* in such cases to the effect that:

"Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting." *Pekin* v. *Industrial Commission,* 285 *Ill.* 31; 120 *N. E. Rep.* 530.

But in most of these cases, petitioner will be found either to have been strictly tending to business when attacked, or to have been compelled to defend himself from such attack at a time when he had been tending to business. *Pekin* v. *Industrial Commission, supra; Verschleiser* v. *Stern,* 229 *N. Y.* 192; 128 *N. E. Rep.* 126. Further, the New Jersey courts have so far refused to apply any such broad doctrine as that alluded to in the above *dicta,* having considered it important to ascertain whether or not the injured employee had "separated himself from his employment" in his quarrel at the time he was injured. *Geltman* v. *Reliable Co., supra* (at *p.*

448); 25 *Atl. Rep.* (2*d*) 897; *Merkel* v. *Gillespie,* 10 *N. J. Mis. R.* 1081; 162 *Atl. Rep.* 250.

Since it appears in the case at bar that petitioner, at the time he incurred the disability in question, was engaged, not in his employment, but had dropped his work to engage in a personal quarrel with a fellow employee, which he had started, at least in words, the accident in question would not seem to have arisen in the course, or out, of the employment, and the decision of the Bureau will be affirmed.