[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by the plaintiff's complaint, dated September 11, 1992. The complaint was amended on October 20, 1992, and was in two counts. The defendant filed an answer and three special defenses to the plaintiff's complaint on December 31, 1992. Thereafter, the defendant filed a Motion for Summary Judgment on February 12, 1993. On January 13, 1994, the court (Sylvester, J.) granted the defendant's Motion for Summary Judgment as to count two of the plaintiff's amended complaint. The defendant's second and third special defenses then became moot because they referred only to the second count in the plaintiff's amended complaint.
The plaintiff, Perry Laferriere, and the defendant, Cicero Booker, were fellow employees at Somers Thin Strip in Waterbury, Connecticut. The plaintiff was employed there since 1987, and the defendant since 1988. On July 3, 1992, they were both working the third shift (11:00 p.m. to 7:00 a.m.). The plaintiff was a mill operator and the defendant was a grinder at Somers Thin Strip. The defendant's job was to make steel rolls of varying strengths which the plaintiff then used to manufacture certain products. These steel rolls were made to various strengths and were wrapped in brown paper with the strength of the roll written on the said brown wrapping paper. As the defendant manufactured the steel rolls, he would put them in a bin for use by the plaintiff. However, on July 3, 1992, the plaintiff needed some of the steel rolls made by the defendant, and there were none in the bin, so he went and took some from the defendant's cart in the grinding room. There was testimony which indicated that the defendant was upset that the plaintiff took the steel rolls off of his cart, and he informed the plaintiff's assistant to tell the plaintiff not to do it again. The plaintiff stated this was the customary way he obtained steel rolls if he needed them, and there were none in his bins. He also stated that his assistant told him that the defendant stated that the rolls were marked incorrectly. However, the plaintiff later found that the steel rolls he took from the defendant were correctly labelled. In any event, the parties were both upset and the plaintiff went into the grinding room to speak with the defendant. The plaintiff stated he showed the CT Page 3969 defendant the wrapping paper he had taken off the steel rolls and a discussion ensued. He stated the defendant said, "I told you not to take the rolls off my cart" and the plaintiff stated, "I can take them if I need them" or words to that effect. The plaintiff stated they were loud and swearing at each other. The plaintiff stated he went to straighten out the matter, but he was getting no where. He stated he folded the brown wrapping paper used for the steel rolls and threw it down on the defendant's desk, and that the paper landed on the steel rolls the defendant had made. He testified he started for the door and as he opened it, he was hit on the side of the head by an RMS meter. This meter is used by grinders to measure the strength of the steel rolls they make and it weighs 12.6 ounces (Exhibit A). The defendant testified that the brown wrapping paper the plaintiff threw at him hit him on the side of the face and that in a reflex action, he went to block his head and because of that reflex action, the meter came out of his hand. This explanation was unique in the court's opinion. He stated he went to get the meter and he saw the plaintiff holding his ear with blood on it. The plaintiff subsequently went to a hospital emergency room and had nine stitches in his ear (See Exhibits B1-B8). The plaintiff collected Workman's Compensation for his injuries and was out of work for twenty-six days because of them.
The plaintiff was terminated by his employer because of this incident. The testimony showed that prior to this incident, the plaintiff and defendant were friends. They and other friends had hunted together two or three times and the defendant went to the plaintiff's house a few times, they had gotten gun permits together and the defendant had invited the plaintiff to his house a few times.
In paragraph 7 of the plaintiff's complaint, he alleges that the defendant committed an assault and battery on him with a metal object and that it was a willful, wanton and malicious act. The defendant's special defense alleges that the plaintiff was injured during the course of his employment and that he is barred from suing a fellow employee by Connecticut General Statute 31-293a and that his exclusive remedy is under the provisions of the Workman's Compensation Act.
The court finds that the plaintiff's injuries were sustained in the course of his employment. The issue then is did these injuries arise out of the plaintiff's employment. An CT Page 3970 injury "arises out of" an employment when it occurs in the course of the employment and is a natural and necessary incident or consequence of it, though not foreseen or expected; and that such an injury may arise either directly from the employment or as incident to it, or to the conditions and exposure surrounding it. Stulginski v. Waterbury Rolling Mills Co., 124 Conn. 355,358. If one employee assaults another employee solely to gratify his feeling of anger or hatred, the injury results from the voluntary acts of the assailant and cannot be said to arise either directly out of the employment, or as an incident of it. Ibid. But when an employee is assaulted while he is defending his employer, or his employer's property, or his employer's interest, or when the assault was incidental to some duty of his employment, the injuries he suffers in consequence of the assault will arise out of the employment. Ibid.
Connecticut General Statute 31-293a reads as follows:
 No right against fellow employee; exception. If an employer or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . . .
The court further finds that the plaintiff's injuries and resultant damages arose out of and in the course of his employment.
The plaintiff's sole remedy lies within the provisions of the Worker's Compensation Act unless the injuries to the plaintiff were caused by the defendant's wilful and malicious acts. To bypass the exclusivity of the act, the intentional or deliberate act or conduct alleged must have been designed to cause the injury that resulted. Quimby v. Kimberly Clark Corporation, 28 Conn. App. 660, 667. Not only the action producing the injury but the resulting injury must be intentional. Ibid. The word intent denotes that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to follow from it. 1 CT Page 3971 Restatement (Second) Torts #8A (1965). Thus, the concept of intent in relation to tortious conduct has reference to the consequences of the act rather than to the act itself. Ibid. But a high risk or probability of harm is not equivalent to the substantial certainty without which an actor cannot be said to intend the harm in which his act results. Ibid.
In this matter, the plaintiff incurred medical bills totalling $2,074.75 (Exhibit G). He also claims $1,335.24 in lost wages as a result of his injuries. This figure is the difference between what he received in Worker's Compensation benefits and what he would have earned had he not been injured. In addition, the employer, Somers Thin Strip, was self-insured and paid the plaintiff a scarring award of $2,964.00 (Exhibit C). The plaintiff testified to the physical problems he incurred in the months following this incident and which were the result of his injuries.
After hearing the evidence, the court finds that the plaintiff has not sustained his burden of proof relative to proving that the defendant's acts were wilful, wanton and malicious. Even if this court were to find that the defendant wilfully and wantonly threw the RMS meter at the plaintiff, it could not, on the evidence presented, find that the defendant intended and knew that the plaintiff would sustain the injuries he did.
After hearing the evidence, the court finds the issues for the defendant on the plaintiff's complaint and for the defendant on the defendant's Special Defense. The court finds the plaintiff's sole remedy lies within the provisions of the Worker's Compensation Act.
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, J.