SARAH G. LANIER, PETITIONER-RESPONDENT, v. KIECK-HEFER-EDDY DIVISION OF WEYERHAEUSER TIMBER COMPANY, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 16, 1964—Decided June 24, 1964.

Before Judges GAULKIN, LEWIS and LABRECQUE.

*Mr. Blaine E. Capehart* argued the cause for appellant (*Messrs. Capehart & Scatchard,* attorneys).

*Mr. Martin L. Haines* argued the cause for respondent (*Messrs. Dimon, Haines & Bunting,* attorneys).

The opinion of the court was delivered by

LEWIS, J. A. D.   This is a workmen's compensation case which involves the application of the "humane instincts" doctrine. The judge of compensation dismissed the petition of Sarah G. Lanier for dependency benefits for herself and minor child as the result of the death of her husband A. V. Lanier (hereafter Lanier). On review by the County Court a judgment of reversal and remand was entered. Lanier's employer appeals.

The crucial facts are not in dispute; they were adduced from the testimony of William Clements, a fellow employee. No medical evidence was proffered. The opposing conclusions reached by the Division and the County Court respectively stem from the discordant inferences drawn from the uncontroverted facts.

Appellant was engaged in the business of manufacturing paper and paper products. At its factory in Delair, a two-bed hospital was maintained with a full-time nurse on duty. About two miles away, the company operated its Merchantville plant (employing approximately 125 persons) where paper milk bottles were manufactured. First aid at the latter location was handled by an employee staff committee, and Clements, a maintenance machinist, was the "first aid man" in charge of the emergency supplies. His training was through a volunteer fire company with which he had been connected, and an advanced course given by the American Red Cross. In case of need, a station wagon was available for transportation from Merchantville to the dispensary at Delair.

On November 9, 1959 Lanier was working in the printing department of the Merchantville plant when, at about 2 P. M.,

Clements was requested by a workman to see what was the matter with Lanier. Lanier was found "standing on his feet leaning against one of the rolls of paper and just staring with no apparent reason, just standing there." Upon being spoken to, he made no reply and gave no sign of recognition. With assistance he was "walked" 40 to 50 feet to the locker room; George Mason (a foreman) and Clements held on to him because they feared he might fall. They seated him on a bench and sent for his foreman, Earl Cox, who on arrival endeavored to talk with Lanier but, likewise was unable to obtain any recognition or response. Lanier just "mumbled," then "more or less" started to answer questions. After deciding that the stricken employee should be taken to the dispensary at Delair, Clements and Cox aided him in walking approximately 15 feet to his locker. Clements said:

"I still thought there is a possibility he might fall * * * I opened his locker and I got his jacket * * * he said, 'I can put it on.' His voice was mumbly and heavy, but I assumed he had his faculties about him and I let him go ahead."

The foremen departed from the locker room, and Lanier was left standing, unattended, in front of his locker where no seat or bench was available. Another employee, Joe Suty, was in the area but he was not within reach. Clements proceeded to his locker which was beyond his view of Lanier. Clements further testified:

"I got my jacket, started back to him; I was about 15 feet from him and looked at him. He was staring at the ceiling and just turning his head, looking up at the ceiling, and I thought—well, this is what I had been more or less thinking was going to happen. I ran over to him and grabbed him. Just as I was grabbing him, his body was rigid but it was trembling. Just as I got to him, he fell."

When Lanier fell his entire body was in "hard contact" with the tile floor. Blood appeared under his head, and he was frothing at the mouth. An ambulance was summoned, and Lanier was taken to the Cooper Hospital in Camden where he died a few days later.

Petitioner produced a death certificate identifying the cause of death as "Sub. Arachnoid Hemorrhage." The hospital records were also admitted in evidence, and they indicated a diagnosis of "traumatic subarachnoid hemorrhage," with complicating "acute brain syndrome, alcoholic intoxication," and accompanying "lacerations and contusions of scalp." Additionally, petitioner's proofs included the records of the same institution relating to decedent's hospitalization as the result of an accident during the previous year (December 29, 1958). Those reports contained a statement: "This patient fell at work. Cause unknown. He had been a heavy drinker & suddenly stopped."

Clements was familiar with Lanier's idiopathic fall and consequent injuries in 1958. He had been called upon to render first aid assistance on that occasion and had observed Lanier lying on the floor, bleeding from the back of his head, frothing at the mouth, rigid and trembling. He testified under cross-examination:

"Q. So that this experience or this condition which you saw in November of 1959 was substantially the same condition which you had experienced with him about a year before? A. Yes, it was.

Q. At that time, what did you do? A. When I got there, I run up and got the stretcher and the blanket and some compresses. We put them on him and put him in the stretcher and they called the ambulance and this time I went to the hospital with him; the first time."

In his "Determination of Facts and Judgment of Dismissal," the judge of compensation made reference to *Dudley v. Victor Lynn Lines, Inc., infra*, and after analyzing the evidence concluded:

"I am satisfied in this case both the respondent and the decedent's fellow employees, for whose acts or failure to act respondent is responsible, did everything that could reasonably be required of them to render aid or procure aid in the emergency which presented itself. I find that the decedent's fellow employees were not negligent but acted as reasonable men should have acted under the circumstances, and therefore there is no causal relationship between Lanier's employment and his death."

The County Court, upon reviewing the record on appeal, found the existence of negligence on the part of Kieckhefer's employees in (1) not immediately summoning a physician or nurse, (2) walking Lanier to the locker room instead of laying him on the floor at the site of the original seizure, (3) allowing him to go for his jacket when there was no ascertainable reason why it could not have been brought to him, and (4) permitting him to stand unattended in front of his locker. We pause at this point to note appellant's objection to the trial court's consideration of and quotation from a Red Cross first-aid manual which had not been admitted in evidence. Under all the circumstances of this case, we are satisfied that it was not reversible error.

Within the guiding pronouncements stated in *Russo v. United States Trucking Corp.*, 26 *N. J.* 430 (1958), we have independently assessed the facts. Clearly, decedent encountered a post-seizure accidental fall during working hours at the company plant and in the course of employment. The precise question posited is whether the untoward event arose out of decedent's employment, *i. e.*, did the circumstances of employment establish a causal connection?

The so-called "humane instincts" doctrine was first applied in this State in *Szabo v. Pennsylvania R. R. Co.*, 132 *N. J. L.* 331 (*E. & A.* 1945), a case arising under the Federal Employers' Liability Act, 45 *U. S. C. A.* § 51 *et seq.* That authority was approvingly cited by our Supreme Court when considering a workmen's compensation matter in *Dudley v. Victor Lynn Lines, Inc.*, 32 *N. J.* 479 (1960), wherein the court said:

"At the common law, an employer has no general duty to provide medical service or other means of relief to an ill or injured employee. But there is at least one exceptional situation in which there is such a duty, *i. e.*, when an employee becomes ill on the job, and he is rendered helpless to provide for his own care. In that situation the employer must exercise reasonable care to put in the reach of the stricken employee such medical care and other assistance as the emergency thus created may in reason require, so that the employee may have his life saved or may avoid further bodily harm." (at *p.* 489)

Note, generally, 2 *Harper & James, Torts,* § 18.6, *p.* 1048 (1956); Annotation, "Ill or Injured Servant — Master's Duty," 64 *A. L. R. 2d* 1108 (1959); Comment, 15 *Rutgers L. Rev.* 366 (1961).

Here, Clements had training and several years' experience in first aid work and, in times of emergency, he occupied an important position of responsibility to his fellow employees. While he was not called upon to make a prognosis or correctly diagnose the symptoms manifested by Lanier, he could or should have known of Lanier's physical and mental incapacity or inability to care for himself. He saw and knew that Lanier, although seemingly ambulatory, was ill, "glassy-eyed" and not responsive to questions or even able to recognize his fellow workmen. The need for prompt medical care was obvious, and Clements, notwithstanding his apprehension that Lanier might fall, caused him to walk and then to be left standing alone and unguarded, albeit for only a short time— but long enough and under circumstances which deprived decedent of the assistance or support necessary to avoid falling. Moreover, Clements was familiar with the events attending a prior experience with the same employee, which should have alerted him to greater precautions. What finally happened was reasonably foreseeable and should have been foreseen. As a first aid administrator, Clements had assumed an obligation to use due care for the welfare and safety of the co-worker in peril who had been entrusted to his charge. The employer had knowledge through its foremen and employees of the exceptional situation which gave rise to a general duty as recognized and discussed in *Dudley v. Victor Lynn Lines, Inc., supra.*

██ We conclude from the evidence that the emergent circumstances under review required more and greater care than that which was exercised by appellant's employees. Their failure was a condition of employment that contributed to an employee's death. It is not necessary that such a contribution be the sole or proximate cause. See *Cudahy Packing Co. of Nebraska v. Parramore,* 263 *U. S.* 418, 44 *S. Ct.* 153, 68

*L. Ed.* 366 (1923) ; *City of North Wildwood v. Cirelli,* 129 *N. J. L.* 302 (*Sup. Ct.* 1943), affirmed *per curiam* 131 *N. J. L.* 162 (*E. & A.* 1944) ; *Ciuba v. Irvington Varnish & Insulator Co.,* 27 *N. J.* 127 (1958) ; *Dudley, supra.*

The judgment of the County Court is affirmed.